UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| STATE OF INDIANA,<br><br>Plaintiff,<br><br>v.<br><br>TOWN COUNCIL OF THE TOWN OF MERRILLVILLE, INDIANA,<br><br>Defendant. | Case No. 2:26-CV-390-GSL-AZ |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Remand and for Reimbursement for Costs and Fees [DE 13]. Plaintiff, the State of Indiana *ex rel.* Todd Rokita, Attorney General of Indiana ("the State"), filed its motion and brief on September 18, 2026. [*See* DE 13–14]. Defendant, the Town Council of the Town of Merrillville, Indiana ("the Town Council"), did not file a response to the State's motion. Because the motion is now ripe and ready for ruling, the Court shall address it summarily. *See* N.D. Ind. L.R. 7-1(d)(5). For the reasons stated below, the State's motion [DE 13] is **GRANTED**.

**BACKGROUND**

On January 27, 2026, the Town Council adopted Resolution No. 46-02 ("the Resolution"), which opposes the location of a United States Immigrations and Customs Enforcement (ICE) processing or detention facility in industrial warehouses within the Town of Merrillville. [DE 12 at 1; *see* DE 1-2]. The Resolution cited a Washington Post article dated December 24, 2025, which noted that the federal government produced a draft solicitation to seek private detention contractors for the renovation and use of industrial warehouses for processing and detainment of ICE detainees, and that Merrillville, Indiana was identified as a

potential location from which industrial warehouses may be converted into a detainment facility having at least 500 beds.[1] [DE 12 at 1–2; *see* DE 1-2 at 25]. The Resolution also indicated that because neither the Town of Merrillville nor its officials were informed of the federal government's plans for the placement of a processing facility within Merrillville, the Town Council could not make an informed policy decision regarding its implication. [DE 12 at 2; DE 1-2 at 44]. As the Resolution acknowledged, prior approvals for the existing industrial warehouses within Merrillville were based, in part, on the limited demand such facilities have for water, sewer, and other such public resources and services, and that the conversion of these warehouses into detainment facilities would place unanticipated demands on Merrillville's public safety services and resources. [DE 12 at 2; DE 1-2 at 44]. Therefore, given the "primary objective of the [Town Council] to ensure the public safety and welfare of its residents, business community and visitors to the Town," the Town Council took the position that Merrillville "is not an appropriate municipality for the placement of a detainee processing facility" and subsequently resolved to oppose the conversion of any existing industrial warehouses within Merrillville into ICE processing or detainment facilities. [DE 12 at 2; DE 1-2 at 44].

The following day, Rick Bella, the Town Council President, issued a statement clarifying the basis for the Town Council's approval of the Resolution. [DE 1-2 at 48]. He explained that under Merrillville's zoning and local use ordinances, existing industrial warehouses within Merrillville were approved and built on the basis of industrial use, not human occupancy, and that the conversion of these warehouses into non-industrial facilities would place significant

---

[1] As part of its inquiry into whether Merrillville could host a potential ICE facility, the Department of Homeland Security contacted two Merrillville property owners—Opus Development Company LLC ("Opus") and Tradelane Properties LLC ("Tradelane"). [DE 5 at ¶ 25]. The Opus facility is located at 8719 Mississippi Street, Merrillville, Indiana 46410, while the Tradelane facility is located at 7400 Mississippi Street, Merrillville, Indiana 46410. [*Id.* at 26].

strain on various public resources and services. [DE 12 at 3; DE 1-2 at 49–50]. He further emphasized that the Resolution is not politically motivated, that Merrillville's priorities are "local control, public safety, responsible planning and respect for the Merrillville community," and that Merrillville is not an appropriate location for an ICE detention facility without regard to local ordinances and community impact. [DE 12 at 3; DE 1-2 at 50–51].

On June 24, 2026, Attorney General Todd Rokita issued a letter to the Town Council regarding the Resolution's adoption. [DE 5 at ⁋ 53; *see* DE 1-2 at 65]. The letter informed the Town Council that its actions violated state law and demanded the Town Council rescind the Resolution, discontinue any and all other efforts to disrupt real estate transactions between the federal government and Merrillville property owners, and issue a public statement that Merrillville will not oppose any such real estate transaction. [DE 5 at ⁋ 53; *see* DE 1-2 at 65]. On July 13, 2026, the Town Council sent a response letter to the Attorney General making clear that it would not rescind the Resolution or take any of the other prescribed actions dictated by the Attorney General's letter because the Resolution was merely an opinion—the Town Council did not legislate or create any rule or policy prohibited by state law. [DE 5 at ⁋ 54; DE 1-2 at 70].

On July 30, 2026, the State filed a civil action against the Town Council in the Lake County Superior Court under Cause No. 45D05-2607-PL-000454. [*See* DE 5]. The Complaint, which asserts that the Resolution is in violation of Indiana Code Section 5-2-18.2-4,[2] seeks both injunctive relief and civil penalties against the Town Council. [*See id.* at 22]. The Town Council was served with a copy of the Summons and Complaint on August 4, 2026, and thereafter filed

---

[2] Indiana Code Section 5-2-18.2.4 provides that a "governmental body . . . may not in any way limit or restrict the enforcement of federal immigration laws . . . to less than the full extent permitted by federal law as long as the enforcement actions do not violate federal or state law." Where the attorney general determines that probable cause exists to believe that a governmental body has violated Indiana Code Chapter 5-2-18.2, "the attorney general shall bring an action to compel the governmental body . . . to comply" and may seek an injunction, civil penalties, or other relief as is necessary to ensure future compliance. *See* Ind. Code § 5-2-18.2-5(a)–(b).

its Notice of Removal on September 3, 2026. [DE 1]. On September 18, 2026, the State moved to remand this matter back to state court. [DE 13]. The motion to remand is ripe and ready for ruling.[3]

**LEGAL STANDARD**

Article III of the U.S. Constitution limits the jurisdiction of federal courts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). The power of federal courts is confined to "Cases" and "Controversies." *Id.* at 423. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). And, for there to be standing, the plaintiff must demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

When a case is removed from state court to federal court, the burden "to establish all elements of jurisdiction—including Article III standing . . ." is placed upon the removing defendant. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). But "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Collier*, 889 F.3d at 897. "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)."Any doubt regarding jurisdiction should be resolved in favor of the states." *Id.*

---

[3] On August 17, 2026, the State moved for a preliminary injunction against the Town Council. [*See* DE 6]. Although that motion is fully briefed and ripe for ruling, its resolution is deferred pending the resolution of the State's current motion to remand.

## DISCUSSION

### I. Remand to State Court

The State seeks remand on two grounds: first, that the State lacks Article III standing to pursue this action in federal court; and second, that this Court lacks subject-matter jurisdiction because the State's enforcement action does not arise under federal law. [DE 14 at 4]. The Court need only look to the first argument, however, as this alone sufficiently compels a suitable basis for remand.

The State argues that the Town Council cannot show that the State has standing to pursue its claim in federal court because the State's claim is against one of its own political subdivisions. [*Id.* at 4]. To support this argument, the State relies on several statutory definitions confirming that the Town Council exists foundationally as a local arm of the State. *See* Ind. Code §§ 36-1-2-13 (defining "political subdivision" as a "municipal corporation or special taxing district"); -10 (defining "municipal corporation" as a "unit, . . . local building authority, . . . or other separate local governmental entity that may sue and be sued"; -23 (defining "unit" as a "county, municipality, or township"); *see also* 5-22-2-13 (defining "governmental body" as "a council, . . . or another establishment of any of the following: . . . (4) A political subdivision"); 5-2-18.2-1 (providing that "governmental body" for purposes of chapter on citizenship and immigration status enforcement "has the meaning set forth in IC 5-22-2-13"); Ind. Code Ch. 36-5-2 ("Town Legislative Body and Executive"). Longstanding case law further confirms the notion that the Town Council exists within the State itself. *See Marte v. Rokita*, 2026 WL 1763302, at *3 (S.D. Ind. June 18, 2026) (quoting *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933)) ("A political subdivision is 'created by a state for the better ordering of government.'").

Indeed, the Seventh Circuit has thoroughly explained that "a state cannot sue one of its cities, because as far as the national government is concerned a state and all of its creatures is a unit." *City of S. Bend v. S. Bend Common Council*, 865 F.3d 889, 892 (7th Cir. 2017); *see State of Ill. v. City of Chicago*, 137 F.3d 474, 476 (7th Cir. 1998) ("Cities generally can't sue their states . . . and a claim by the state against the city has even weaker foundation, for the city exists at the state's sufferance."); *Arlington Heights v. Reg'l Transp. Auth.*., 653 F.2d 1149, 1150–53 (7th Cir. 1981) (explaining that a part of a state cannot sue the state). Under this rationale, then, the State lacks Article III standing to pursue an enforcement claim against the Town Council because the Town Council is ultimately a creature of the state, and it is long understood that one cannot sue themself in federal court. *See State of Ill.*, 137 F.3d at 476 ("Relieving the state of a self-inflicted wound would be a novel mission for a federal court—especially when the state's adversary is a city, a subordinate political body."); *United States v. Interstate Commerce Comm'n*, 337 U.S. 426, 430 (1949) (highlighting "the long-recognized general principle that no person may sue himself" because "courts only adjudicate justiciable controversies"). Without standing, there is no subject-matter jurisdiction, and without subject-matter jurisdiction, the case cannot reside in federal court; the case must be remanded back to state court. *See Moore v. Wells-Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018) ("Standing is an element of subject-matter jurisdiction in a federal civil action[.]"); *Sarauer v. Int'l Ass'n & Aero. Workers, Dist. No. 10*, 966 F.3d 661, 668 (7th Cir. 2020) ("A motion to remand must be granted if the case removed from state court could not have been brought in federal court originally for lack of subject-matter jurisdiction.").

## II. Request for Removal Fees and Costs

In addition to seeking a remand back to state court, the State also requests that the Court award all fees, costs, and expenses incurred as a result of the Town Council's removal. [DE 14 at 11]. Pursuant to 28 U.S.C. § 1447(c), where a case is remanded back to state court, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." Under Seventh Circuit jurisprudence, "[a] district court may award fees under § 1447(c) where 'the removing party lacked an "objectively reasonable basis"' for seeking removal." *Jackson Cnty. Bank v. DuSablon*, 915 F.3d 422, 424 (7th Cir. 2019) (quoting *Wolf v. Kennelly*, 574 F.3d 406, 411 (7th Cir. 2009)). Stated differently, "if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorney's fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007); *see also PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 654 (7th Cir. 2014) (per curiam) (affirming award of fees and costs to plaintiff where there was no objectively reasonable basis for federal jurisdiction or removal); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (affirming award of fees and costs where "[r]emoval was unjustified under settled law").

But as the United States Supreme Court explained in *Martin v. Franklin Capital Corporation*, § 1447(c) provides that a remand order "may" require payment of fees—it does not state that the order "shall" or "should" impose fees. 546 U.S. 132, 136 (2005). Rather, the Court noted that "[t]he word 'may' clearly connotes discretion," and that "had Congress intended to award fees as a matter of course to a party that successfully obtains a remand, we think that '[s]uch a bold departure from traditional practice would have surely drawn more explicit statutory language and legislative comment.'" *Id.* at 136–37 (alterations in original) (quoting

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 534 (1994)). Thus, whether to award fees and costs is entirely within the district court's discretion, and § 1447(c) provides no bias in favor nor a presumption against fee awards. *See id.* at 137.

Here, the Court is within its discretion to award fees and costs under § 1447(c). Two reasons support this. First, as explained previously, Seventh Circuit and Supreme Court precedent clearly dictate that a political entity cannot sue or be sued by another component or subdivision of the same entity in federal court. That point alone establishes that there was not an objectively reasonable basis for federal jurisdiction in this case. But second, it is noteworthy that the Town Council failed to respond to the State's motion to remand at all, suggesting the Town Council either was aware pre-removal, or became aware post-removal, that Article III standing was missing and that the case should not have been removed to begin with. The Town Council could have also responded with a notice of no objection to remand, but even this it did not do. Thus, an award of fees and costs under § 1447(c) is proper. *See Lott*, 492 F.3d at 793 (providing that fees should be awarded where clearly established law demonstrated there is no basis for removal); *Spencer*, 763 F.3d at 652 (upholding award of fees where party seeking removal had not "offered even a colorable argument that removal was reasonable").

## CONCLUSION

The State's Motion to Remand and for Reimbursement for Costs and Fees [DE 13] is **GRANTED**. The Court **ORDERS** that this case be **REMANDED** to the Lake County Superior Court. The Court will retain jurisdiction of this matter solely for purposes of addressing the fees and costs associated with the improper removal of this case.

The State filed an itemization of fees and costs, along with a proposed form of order, on October 22, 2026. [DE 19]. The proposed form of order will not be considered, however, given

the entry of this Order and Opinion. While the State provided a breakdown of fees and costs in its Affidavit of Fees, [*see* DE 19-1], the State listed that it incurred 6 hours of work for preparing "the proposed order, notice of submission of proposed order, and this affidavit," without further delineating how much time went specifically into preparation of the proposed order. [DE 19-1 at 4]. Accordingly, the State is **ORDERED** to re-file its itemization of the fees and costs it incurred because of the removal, minus the fees and costs associated with preparing the proposed order, **on or before November 3, 2026**. Once the amended itemization is filed, the Town Council shall have seven days from the date of filing to object.

SO ORDERED.

ENTERED: October 23, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court